24-2103 Nathaniel Silva-Phil Rothkugel v. Schmidt Baking Distribution, et al. Harold Lichten, Chief Justice of the U.S. Supreme Court I have a question. If you'll just listen to my question before you answer. Let's assume, hypothetically, that your clients don't succeed here and this matter goes to arbitration. In the Bissonnette case, I recall that in arbitration, in a similar case elsewhere in arbitration, it then became advantageous for then-Bissonnette or Flowers to argue that, in fact, these were workers so that they could win the arbitration agreement, that they were not independent distributors. They were not businessmen, but they were transportation workers. Moving forward, if the arbitration, if Section 1 were not to apply and this were to go to arbitration, would the underlying claims, would the defense by Schmidt include a claim that these are transportation workers and not? Do you understand what I'm saying? Yes. Would they be in a similar position where they would be arguing the opposite of what they're arguing here now to invoke arbitration? I don't think so for the following reason. The claims my clients are making are that they were employees, not independent So it would be in Schmidt's interest to claim that they weren't employees at all, that they were entities, et cetera. And we would be arguing that, no, you look beyond the entity. You look at what they were doing, which is what Saxon says. The Supreme Court says in Saxon. That's what you do in whether they're transportation workers. You look at what they do, not who they work for. Okay. Thank you. I think you've answered my question. Okay. We have kept you up here quite a long time, and we're going to see you again because you have still reserved two minutes. Thank you. It's on us that we kept you up that long. Mr. Friedman for the appellee. Good morning. May it please the Court? I'm Rob Friedman for defendant appellee Schmidt-Baking. Plaintiffs cannot meet their burden to show that the narrow FAA transportation worker applies. It applies to personal contracts of employment for certain covered disputes, classes of transportation workers, that is, natural persons, not business-to-business contracts, that do not require the worker personally perform transportation work. Well, why did your company suggest that these people enter? Why did your client prepare these distribution agreements? If this is a true, you know, at arm's length transaction, an engagement, why would they prepare the agreement, assist them in creating an LLC, basically do all the legal work for them, and then just have them sign on the dotted line? Can you explain to me how that's an arm's length transaction of a business-to-business transaction? Sure, Your Honor. Well, that's not exactly correct, so let me address that. First of all, there are distribution agreements, and there's nothing wrong with a company saying we want to work with other companies, a business-to-business transaction.  But this doesn't appear to be what happened here. This appears to be they're doing work distributing your client's bread to where your client tells them to go, in the quantities your client tells them to go, and then, perhaps because there's litigation all over the country, your company decides, we think you should incorporate, here's how you should incorporate, and here's the documents on how to do that. Well, again, Your Honor, in the record, in Joint Appendix 334, there's a franchise disclosure document. They had 14 days to consider this, and in the franchise disclosure document, they are told, don't take our word for it. Go speak to an accountant. Go speak to an attorney. Well, of course, that's a wise thing to do, but you still, your client prepared these documents. It was your client's idea, right? Mr. Silva didn't walk in and say, hey, I think I want you to create an LLC for me. Did that happen? Your Honor, it was Mr. Silva and Mr. Rothkogel's decision to enter into these contracts, and in fact— Well, obviously, they signed them, but that's not my question, counsel. My question is, whose idea was it to come up with the LLC? Your Honor, the evidence is they were presented with documentation and they became LLCs.  By your client. Appellees provided them the documentation. That would be your client. Is that the answer? Yes, Your Honor. Why can't you say that? My client provided them with the LLC. Sure, Your Honor. Okay. And my answer would also be, so what? They have the right to do that. They have the right to want to work with businesses. If I go in and buy a Ford, Ford is giving me the contract also. I'm not going in the fire. Is it relevant that part of Schmidt's motivation was to try to avoid having the arbitration exception apply to avoid having the wage and hour laws apply? Is it relevant? Your Honor, it's not relevant, and there's no record. There's no evidence in the record that's the case. What is evident in the record is— But let's assume for the sake of argument it was. I assume your answer is just what you just said, like who cares? Who cares so much? At the risk of invoking a different analogy, the question is tax evasion or tax avoidance. If you know certain things, certain activities are taxed, and you purposely structure your investments in a way that they're not going to be subject to the tax, and the whole reason you structured them that way is so that you don't have to pay the tax, the answer is, so what? It's tax avoidance. So what? I have structured around the law, but in a way that's not illegal. That's exactly right, Your Honor, and I want to focus on two admissions they make that are dispositive to this case. One of them is they admitted in their opening brief that not all business-to-business contracts related to delivery are contracts of employment of transportation workers under the Section 1 example. They even provide a helpful example of the contract between Amazon and FedEx. Just give me a page. Opposing brief in the page 23, note 7 in their opening brief, Your Honor. Right. Obviously, the exception exists for legitimate business-to-business contracts, but let me ask you a different question. If I tried to get a tax advantage, if I have a tax advantage by incorporating a business under a spouse's name versus my name, and I do that even though the business is mine, I run the business, I do everything, it's just the name only, certainly the IRS might look at that and investigate whether that is a true exemption I'm claiming. So, yes, there are abilities to frame things so that you don't have certain business consequences, but if that framing is not a legitimate or a sham, certainly the government would take notice. Would it not? Your Honor, under the IRS, they might. But let's talk about that because my colleague made certain statements about the contract that are not accurate. And let's talk about the realities of this. They had the ability to hire who they wanted to hire. They had the ability to run the distribution as they saw fit. The exclusive right to select fit. Let's hold up. They run the distribution as they saw fit how? Do they determine the bulk of the clients to deliver to? Your Honor, they determine some of them. In fact, they grew their client base. That's not my question. My question is who sets up the contracts for the bulk of who they're delivering to? For the bulk, it might be Schmidt. But, Your Honor, I want to point something out which is critical which they ignore. There was an opportunity here for equity and revenue stream. They grew their customer base, in the case of Mr. Silva, from 5 to 32. Does the record show that they grew it or it grew? Because it wasn't clear from me to me on the record why it grew. Was that due to their efforts? Was it due to Schmidt negotiating with more stores? I think it's a combination of both. What do you say you think? Is there anything in the record that tells us? Your Honor, in the record it shows that Schmidt helped in assisting to grow the business. That's correct. But I also want to point out because this idea seems to be that this contract. But does that preclude a finding that this is employment just because the employee helped grow the business? That happens all the time in employment situations, right? Your Honor, the contract is what we have to look at. And the contract here is between businesses to business. I also want to go back to a question that Judge Kahn asked about setting prices. The record shows the exact opposite of what they said. Section 3.3, which is Joint Appendix 99, says distributor, that's them, the corporations, has the absolute right to resale prices for products. There's a couple of exceptions for private label. But they get to set the pricing. And there was something that my colleague said. How many of the clients is that for? Because as I understand it, the bulk, 95% of the distributor, the products they're distributing, are to companies where Schmidt sets the price. Your Honor, I don't believe that's in the record. I believe what's in the record is the opposite. They have the right to set the pricing. Is there anything in the record as to whether it's 95%, 50%, or is there a gap in the record on that? Your Honor, I believe there's a gap in the record there, but I don't think that makes any difference. I think what makes a difference is the text of the language. You don't think it would matter if 95% of the prices were set by Schmidt? No, I don't think it would matter, Your Honor. And I say that because we have to go look at the text in the present. And the text here is that it has to be contracts of employment of transportation workers. Can I ask you that? Because really what the Supreme Court most recently did in New Prime, you go back to the text of the statute, right? Because we can talk about policy all day and what would be a good idea and all that. And that's of no consequence. The Supreme Court really did a very deep textual analysis. Here it's a contract of employment. And the full language is not with a worker, right? It's a contract of employment. Now I've lost the text. Your Honor, nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers. Right, so it's of, right. So it's not contract of employment with the worker. It's contract of employment of a worker. So I want to float this textual question to you and perhaps the other side can answer it too. It seems like a lot of what we're talking about here is the idea that if the contract is with a business entity, right, then it's obviously not with the worker. And then we start getting into questions of contractual privilege, right? But if the statute is not worded that way and it says a contract of employment of a worker, and in other words it's a contract that is designed to get work done, then that would be a reading that would lean in favor of your opponent, right? No, Your Honor. I don't have to speculate about that because three courts of appeals have discussed this very language and so has New Prime. And New Prime has said it's work by workers. Well, no, I know the work has to be by the workers. I'm talking about but does there have to be contractual privity between basically the contract and the workers? Yes, Your Honor. Because it didn't say a contract of employment with a worker. It said contract of employment of a worker, so employment of a worker. So play out how that grammatical analysis matters because it does because those are the words. Tell us why that grammatical structure cuts in your favor. Well, Your Honor, first and foremost, there's two parts to the exemption. First one is contracts of employment, and that's been termed to favor us in three cases from the Fourth, Sixth, and Ninth Circuits. So that favors us. This is not a contract of employment. Secondly, if any other class of workers has been interpreted very, very narrowly and circumstantially. I guess I'm going for the of. I get it how it's most of the fussing comes over what's a contract of employment, who's a worker, but I'm looking at the preposition that links those two, and that of is a word that's in the statute, and I'm asking you now what it means. Your Honor, Circuit City teaches and New Prime teaches that we have to apply the residual. It's a residual clause, transportation worker. We have to apply justum generis, and it has to be a natural individual person. Whether it's of, with, what not, the worker has to be. But even if it's a distribution agreement and it provides for the employment of drivers, why is it not on its face a contract of employment of drivers? I think that's judging. Yeah, that's where I'm going to. Not who a worker is. I get it. A worker is a person. A worker is a human being. It's not robots. Your Honor, the workers are not parties to the agreement. The only parties to the agreement are the businesses. The question is if it's a distribution agreement and there's a lot involved beyond the transporting, but it does provide in part for the employment of drivers, why wouldn't it expressly fit within the words a contract of employment of workers? Your Honor, the driver's contract is with the corporate entities. Ah, and you just use with. See, I know this sounds picayune, but the Supreme Court did this, right? They did a hyper-technical grammatical analysis, linguistic analysis of the text. And that's what I'm asking is, it seems like a lot of our arguments on both sides have been, is this a contract with the worker or is it not a contract with the worker? No, it's a contract with the business. We'll ignore that it's with the business. It's really kind of effectively with the worker. I'm suggesting that is that the wrong set of questions to be asking anyway because it really seems to be going towards a question of contractual privity and is instead the text of the statute asking us is it a contract of employment of workers and does that change from with to of, shift our analysis away to where's the privity, to what is the nature of the employment or the use, as Newcrime told us, it's not an employee relationship. So just work with me there, and maybe you're right, but tell me why it's of doesn't hurt you. Well, as an initial matter, we first have to get through the first part that a contract of employment is business to business, and they can't get past that issue. The business to business here is, but second, why it does not hurt us is because of the very reason how this has been interpreted by multiple cases. I'm not aware of any court of appeals that has made the distinction, Your Honor, that you've just made. That doesn't mean we can't reach that conclusion. Your Honor, sure. We're going back to the other three cases, but we could reach that conclusion, right? Your Honor, I think reaching that conclusion would deviate from Circuit City and Newcrime, that this is a very, very narrow exemption. Well, it wouldn't deviate from Newcrime. I thought that the people in Newcrime were effectively in the same boat as the plaintiffs here. Your argument is that, right, but, I mean, the Supreme Court didn't reach that question. They did not reach it. I get that, but you can't say we're in a different boat. We're in the same boat. The Supreme Court may not have cared that we're all in the same boat. They didn't decide the case based on the presence of the same boat, but if you look at the record, it floats like the same thing. Your Honor, this is a business contract. This is a business contract for distribution. This is not a contract of employment. It is a contract between two businesses, and despite their best efforts to say that there was no ability. That's where I'm coming back to. You're saying it's a contract between two businesses, right? That is a privity argument, and I'm asking you why the privity question, who's in contractual privity, is the deciding analytical factor when it doesn't say in the statute, a contract for employment with a worker, because then you would say the contract has to have a signature as a worker. Why is it not better for your opponent to say it's a contract of employment of a worker, meaning it's using the worker, the workers? Tell me how to read of, and don't keep going back to contract of employment. Your Honor, I'm reading of as excluding businesses, that no business is like a worker, which is consistent with specifically how Tillman and the other cases have interpreted it. I'm having difficulty, Your Honor, and you can see that I apologize, but I'm having difficulty. Oh, I'm having plenty of difficulty too. With both sides, I don't know. But I'm having difficulty interpreting of as changing the meaning of a statute that has been interpreted over and over not to apply to this situation. Let me ask you a different question. The third parties, your claim is that Mr. Silva and Roth Kugel worked for a third party. Correct. Not your client. That's correct. Who is that? I don't know who that was, Your Honor. It was some company that was a third party that hired people to provide these services. Okay. And were the other potential 30 members of the class all employed by that company, or were they employees of Schmidt? I don't know the answer, Your Honor. So you can't tell us from the record whether these people were actual employees, direct W-2 employees. Not these two, but others, potential class members. I can speak to these two, Your Honor. I cannot speak to others. I just don't know. And if it's in the record and I don't have it, I apologize. But I cannot speak to that. I could speak to the fact that they said initially they were W-2 employees of Applee. That's not correct. I could speak to the fact also, and this is critical, Your Honor, and I think it may answer the question if I have not answered it properly. The contract we're talking about here is not a contract for employment. It's a contract to perform certain services. It does not require them to do anything. And I think that's very, very critical, and I think it's where they fail the test. And I think there may be a conflation here between the merits, which they will have the opportunity to address in arbitration, and this issue here, whether they are transportation workers. But the distribution agreement is not an employment contract. It's not an employment agreement. It is a business-to-business contract for distribution services, and it gave them the power in Sections 2-3, Sections 3-1, Sections 4-5. 4-5 is particularly meaningful. 4-2, they took passage of the bread, and then they were responsible for getting it there. I also want to address the personal guarantee, but they never promised to drive a truck. There's nothing in these contracts that ever requires them to do any driving whatsoever. Put another way, the personal guarantee they reference is a safety net. It's not a steering wheel. And I do want to end, because I see a problem. I guess they could have used the horse and buggy to deliver the bread, but then that might not have, you know, complied with getting it there on time. That seems kind of a, you know— But, Your Honor— But that raises a point that I think you make in your brief, which is what is this thing? You concede is a factual and a legal question, correct? There were factual determinations for the district court to reach its conclusion, Your Honor. But yet you can't answer many of the questions we've posed as far as what this is. Well, Your Honor— So do you agree that in order to determine even your claim that this is a business-to-business contract, that there should be a factual—a hearing to take facts? Absolutely not, Your Honor. There should not be a remand— That's not your backup argument on your brief? Your Honor, our argument is that—and I want to raise Bissonette. Bissonette is critical because it says we do not want to create a mess, discovery, whatnot, out of a statute intended to avoid that. And I want to point to the rule here. The rule is simple. The district court found that this was a business-to-business contract. It did not have the hallmarks of an employment contract. And I think that goes back to the question here. This is not an employment contract. It did not have the hallmarks of an employment contract, such as salary, wages, benefits, whatnot. Instead, it had the opposite. It had all of the hallmarks of a true business-to-business contract. But that's why we're here, right? Because that's being challenged. If we were to disagree with you, is your fallback position that there needs to be an evidentiary hearing? Your Honor, there could be, but it's unnecessary. It's unnecessary— If we agree with you. But if we don't agree with you, then your position is there should be an evidentiary hearing. Your Honor, an evidentiary hearing I think would be inconsistent with this and that because it does exactly what the statute avoids. But I want to go back and point out what the district court found. Not the hallmarks of employment, the hallmarks of a business-to-business, and I also want to go back and talk about the equity because they've made a point to say, oh, this is just business as usual. This is just doing the same thing. In employment contracts, your Honor, there is not the situation where they buy an area. In this case, with Silver, it was 117-115. With Mr. Rothkugel, it was 114. And over the period of time they owned it, in fact, Mr. Silver, we were asked earlier, was he forced to sign this? He bought a second area, your Honor. He didn't have one area. He had two. So the idea that somehow he was forced to do this is being ---- When you say he bought it, he paid? He paid, your Honor. He paid for it and he financed it. And, in fact, he went the bought price of 117 was $43,358. He then sold it for $82,264 in his second area that he bought afterwards. And, again, I think it's critical, your Honor, that this idea is, oh, he's being forced to do this. He's being forced so much that he buys another one. And in the second one, he made even more, $33,952 to $83,408. During this time, there was also revenue stream, your Honor. This is not an employment contract. With respect to Rothkugel, same thing. And, by the way, they also grew their areas. $35,000, Mr. Rothkugel bought it, and then he sold it for $67,000. We've been over that, right? They grew their areas sometimes because your client entered into more contracts, other times because they went to mom and pop stores. But, your Honor, they could have lost money, they could have made money. The court found, in addition to lacking the addition of the hallmarks of an employment contract, this had the opposite, not only the terminology, but also the equity interest. And, your Honor, I want to point back to two admissions they made because I started making that. They admit that business-to-business contracts are not covered. They even give an example that would apply here. Secondly, and this is critical, your Honor, at the district court they said, there is nothing in the agreement to suggest plaintiff Silver, plaintiff Rothkugel, or parties to the relevant agreements in their individual capacities, and all relevant agency principles require a finding that plaintiffs are not personally parties to the contract. They can't have it both ways, your Honor. They admit business-to-business contracts like this one, like what our judge, Judge Shea, found to be business-to-business, are not covered under Section 1. Boom, they lose on that. Second, they admit they're not parties to the contract. They're attempting to have it both ways. We've shown here a bona fide, legitimate business-to-business contract. And, your Honor, even today, in all the argument, there was a motion to compel, there was reconsideration, whatnot. At no point have they ever shown anything in this contract that would personally require them to drive anything because it doesn't exist. Like so many other companies, you gave the example of a horse and buggy. I think perhaps a better example would be forget about the horse and buggy. Mr. Silver could have hired John Smith to do it. There was also, and in fact, he had that absolute right to hire whoever he wanted, run his business as he pleased, and he could have done that. Well, I suppose Schmidt could also contract with a transportation company, right, to deliver its bread. Sure. That, you know, a company that owns trucks. Well, your Honor, that's this. That's this. We don't know what they're driving, though, do we? Your Honor, they said they were driving a truck. They put it in the record, they said they're driving a truck. Is it a Schmidt truck? No, your Honor, it's their truck. It was their truck, and while they were provided certain, you know, dollies and whatnot, it was their equipment. They invested. This was a real investment. This is in the record? This is absolutely in the record, your Honor, and also in the record is, and, in fact, is Exhibit 1F, Joint Appendix 338. It's an example of what they have to do, what they were spending, whatnot. It is all in the record, your Honor, and that's why our case aligns with every court of appeals that has addressed this. This is a business-to-business contract. It involved risk and gains. In this case, they had gains. This does not have the hallmarks of employment, and, your Honors, they are asking this court to do something that no other court has done. I also want to address Adler that they mentioned because they try to throw Adler in the mix from the Third Circuit as somehow an exception. Adler flat-out says that it's not addressing this issue. So the cases we've cited have addressed them head-on, Tillman, Amos, and Flyler. The Adler case is not, is a different case because in the Adler case, the court flat-out says it was undisputed that the contract required the individuals Charles and Grant Adler themselves to perform work. We do not have that here. We have the exact opposite. We have a contract that never requires them to perform work. This is a somewhat, I guess, futuristic question. We had the somewhat facetious exchange about horse and buggy, and maybe this is something that's not going to be so unrealistic in five or ten years. But, you know, driverless cars, and let's say we have driverless trucks. There are some of these on the road now. They're, you know, things being delivered by drone. Let's say you had this contract exactly as it's written here and project ourselves ten years into the future and automation has come to the point where, let's say, Mr. Silva's company was able to buy a fully self-driving truck and a robot that works in the back that exists out in some places experimentally and loads and unloads these things. Would he have been able to – would he have been in compliance with the contract if the way he completed the distributorship requirements were with a self-driving car and robots? Yes, Your Honor, because the contract gives the companies the right, and it's very clear in the sections we've cited. They are given the right to operate the businesses as they see fit.  I think that – I assume that was the answer to the question. I know that's a dramatic counterfactual. Your Honor, you've kept me a little bit late also, and I appreciate that. No, no. I'd appreciate the fact I was able to answer your question, but I do want to also point out one other thing. They mention personal guarantee. They make some other arguments as well. They've waived these arguments. I wanted to address it. We're here. You ask me questions. I'm going to answer your questions. Let me ask you one more question with the indulgence of my colleagues here, and this is completely off everywhere. This law was passed in the 1920s, and I'd be curious to hear from both sides. How is it possible that 100 years later this keeps coming before us and the Supreme Court, and everyone is still trying to figure out what on earth this statute means? Is there some reason it just wasn't litigated for 75, 80 years, and now all of a sudden we're finding it tricky? What is the phenomenon that explains this burst of litigation, again, over a statute that's been on the books for 100 years? Well, it's a hot area. Arbitration has become more common. People are looking more closely. But, Your Honor, what has not been decided in their favor is exactly what they're asking this Court to do. No, I get that. I'm just curious why now we've got all these circuits. It is something of a phenomenon. We're seeing more arbitration. We're seeing more challenges. I think that sometimes if the Supreme Court comes out with a transportation case, even if it does not stand for this proposition, I think we have what we have here, candidly, attempts to argue that the Section 1 exemption applies when it does not apply. And I think that's what we have here. It does not apply, Your Honors. We ask that you affirm the judgment of the District Court. Okay, thank you. Thank you, Your Honor. Mr. Licton, at long last, you're back up at the podium. We are, I think, for the sake of everyone's stamina on both sides, we're going to try to keep the rebuttal to two minutes. But we look forward to hearing what you have to say. Yes, first of all, to answer one of your last questions, New Prime decided, had the same provision that he's talking about, that anyone could drive the truck. The plaintiff wasn't required. The only difference in New Prime from this case is that they didn't deal with the incorporation question, but all the other questions you've, or most of the other questions you've asked, New Prime was the same exact contract. And what the court said was, if you're an independent contractor, you're still covered by Section 1 because the meaning of a contract of employment is extremely broad. The same provision was there that he didn't have to do any of the work, and that didn't answer the question. Secondly, he kept saying in his argument that this was an agreement between two companies, therefore ignoring the personal guarantee. The personal guarantee reads, and I want it personally signed, and it says, quote, and all guarantors shall remain exclusively and solely liable and responsible for both the proper performance of all terms of the distribution agreement and any loss of damages or sanction as a result. And that's Section 2.3 of the agreement. So how can they say this was just an agreement between two companies when my client as a signatory can be made personally responsible in arbitration and is required to guarantee the performance? That takes it out of a business-to-business relationship. Counsel, I think we covered the guarantor. Okay, I'll move on. But let me ask you a quick question. Your opponent just said nothing in this agreement contemplates doing anything, including delivering by trucks. But the agreement, as I look at JA-102, talks about Section 4.3, talks about the use of racks, trays, dollies, displays, and other items provided by Schmidt for the purpose of delivering and selling products. And then if you look at Section 1.4 at JA-94, it talks about direct store delivery, that the delivery has to be physical and it has to be direct to the outlet. So other than drones or selfless driving cars or horse and buggy, which presumably dollies wouldn't work very well, doesn't it imply, it doesn't use the word truck, but how else are you going to comply with these conditions? Yes, that's exactly right. In all these cases, they're deliveries by truck. And unlike other arrangements, my client, they bought a route. Maybe he bought two routes, but he drove both routes. But you buy a route and you service the route, one person. That's the way the whole system operates. That's the way it operated in the decisions in Canales, which is the First Circuit, the Tenth Circuit, Brock, the Third Circuit, Grumman. Is there anything in the record that the trucks say Schmidt baking or anything like that in the record? I don't know the answer to that. Okay. Although I don't think that's relevant to the Section 1 inquiry. Next point, very quickly. In the Ninth Circuit We're going to give you one extra minute. Okay. Thank you. In the Ninth Circuit case, the Fly Low case, which they referenced several times, the Court emphasized, quote, While a natural person, such as an independent contractor, may be a transportation worker, a non-natural person, such as a business entity that employs or contracts with transportation workers, is not and cannot be a transportation worker, nor is such a non-natural person similar in nature to a transportation worker. Because the plaintiffs in that case. Yeah, but they're not claiming to be. They're not claiming that the company itself is a transportation worker. I don't think anybody's arguing that. Everybody, I think, is understanding that if there's a transportation worker here, it's Mr. Silva.  I don't think there's a dispute. But they keep arguing, Your Honor, in fairness, they keep arguing that because this was a contract between two corporations, it was not a contractor before. That's a different argument. Okay, listen. I think that we've had your argument. We thank you both very much. Thank you, Your Honor. We kept you both far, far in excess of the allotted time, and we appreciate your arguments. And unsurprisingly, we will take this case under advisement. Thank you. Thank you all very much.